# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **FLOTEK INDUSTRIES, INC.,** § | |
| § | **CASE NO. 4:16-CV-03584** |
| **Plaintiff,** § | |
| v. § | |
| § | |
| **GATES CAPITAL MANAGEMENT, L.P.,** § | |
| **GATES CAPITAL MANAGEMENT, INC.,** § | |
| **GATES CAPITAL MANAGEMENT GP,** § | |
| **LLC, GATES CAPITAL PARTNERS LLC,** § | |
| **ECF VALUE FUND, L.P., ECF VALUE** § | |
| **FUND II, L.P., ECF VALUE FUND** § | |
| **INTERNATIONAL LTD., ECF VALUE** § | |
| **FUND INTERNATIONAL MASTER L.P.,** § | |
| **and JEFFREY L. GATES,** § | |
| § | |
| **Defendants.** § | |

## DEFENDANTS' UNOPPOSED MOTION TO APPROVE SETTLEMENT

**BRACEWELL LLP**
Bradley J. Benoit
Attorney-In-Charge
State Bar No. 24012275
Southern District of Texas Bar No. 24495
brad.benoit@bracewelllaw.com

711 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone: 713-221-1224
Facsimile: 713-222-3204

*Of Counsel*:

**SCHULTE ROTH & ZABEL LLP**
Michael E. Swartz
Randall T. Adams

919 Third Avenue
New York, New York 10022
Telephone: 212-756-2000
Facsimile: 212-593-5955

## **TABLE OF CONTENTS**

**I.     NATURE AND STAGE OF PROCEEDINGS** ................................................................1

**II.    LEGAL STANDARDS AND ISSUES** ........................................................................2

    A.     Section 16(b) of the Exchange Act ................................................................2

    B.     The Court Must Evaluate the Settlement Only to the Extent Necessary to
          Ensure Diligent Prosecution of the Litigation ...........................................................3

**III.   ARGUMENT** ....................................................................................................4

    A.     The Action Was Diligently Prosecuted .................................................................4

    B.     The Settlement Was Fair .......................................................................9

**IV.    CONCLUSION AND PRAYER FOR RELIEF** .............................................................15

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                              **Page(s)**

*Arthur G. McKee & Co. v. Gulf & Western Indus., Inc.*,
  52 F.R.D. 332 (D. Del. 1971) .................................................................................................3

*Chechele v. Elsztain*,
  No. 11-cv-3320, 2012 WL 12358221 (S.D.N.Y. Aug. 1, 2012)..........................................3, 4

*Dreiling v. Am. Online Inc.*,
  578 F.3d 995 (9th Cir. 2009) ................................................................................................12

*Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*,
  340 F.3d 79 (2d Cir. 2003).....................................................................................................10

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
  423 U.S. 232 (1976).................................................................................................................2

*Greenfield v. Cadian Capital Mgmt.*, LP,
  No. 15 CIV. 4478 (ER), 2016 WL 5793416 (S.D.N.Y. Sept. 30, 2016) ................................10

*Greenfield v. Criterion Capital Mgmt., LLC et al.*,
  No. 15-cv-03583, 2016 WL 4425237 (N.D. Cal. Jul. 5, 2016) ........................................10, 12

*Lowinger v. Morgan Stanley*, 841 F.3d 122 (2d Cir. 2016)..............................................................5

*Reliance Elec. Co. v. Emerson Elec. Co.*,
  404 U.S. 418 (1972).................................................................................................................2

*Roth v. Goldman Sachs Grp., Inc.*,
  740 F.3d 865 (2d Cir. 2014)....................................................................................................9

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ....................................................*passim*

  15 U.S.C. § 78m(d) ...............................................................................................................10

  15 U.S.C. § 78p(b) .......................................................................................................1, 2, 3, 7

  15 U.S.C. § 80b-3 ..................................................................................................................11

**Other Authorities**

17 C.F.R. § 240.13d-3......................................................................................................................11

17 C.F.R. § 240.13d-5......................................................................................................................12

17 C.F.R. § 240.16a-1 ........................................................................................................6, 10, 11

Fed. R. Civ. P. 12(b) ........................................................................................................................1

Fed. R. Civ. P. 23.1 .........................................................................................................................4

SEC Div. of Corp. Fin., Compliance and Disclosure Interpretations,
*Exchange Act Sections 13(D) and 13(G) and Reg. 13D-G Beneficial Ownership Reporting*,
Section 105, Sec. Com. Discl. 5618632 (C.C.H.), 2015 WL 5618632 (Sept. 14, 2009)................12

Laarni T. Bulan et al., *Securities Class Action Settlements: 2015 Review and Analysis*,
Cornerstone Research, 2016 .........................................................................................................14

Plaintiff Flotek Industries, Inc. ("Flotek") commenced this action on December 6, 2016. Defendants Gates Capital Management, L.P., Gates Capital Management, Inc. ("Gates Capital Management"), Gates Capital Management GP, LLC, Gates Capital Partners LLC, ECF Value Fund, L.P., ECF Value Fund II, L.P., ECF Value Fund International Ltd., ECF Value Fund International Master L.P., and Jeffrey L. Gates (collectively, the "Gates Defendants") file this unopposed motion to approve a settlement as follows.[1]

## I. NATURE AND STAGE OF PROCEEDINGS

1. This action was brought by Flotek pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78p(b) ("Section 16(b)"), to recover short-swing profits from the Gates Defendants.

2. An arm's-length settlement has been reached between the Gates Defendants and Flotek following Flotek's diligent prosecution of the matter (the "Settlement"). The Settlement provides for payment by the Gates Defendants to Flotek in the amount of $15,482,862.90 in exchange for a full release to the Gates Defendants and related entities and individuals from any and all Section 16(b) liability arising from or relating to the trades at issue in this dispute. The Settlement is conditioned on the Court entering a final order and judgment dismissing the action with prejudice, finding the action was diligently prosecuted, and releasing the Gates Defendants and related entities and individuals from Section 16(b) liability based on trading in Flotek securities (the "Release").

---

[1] The Gates Defendants and Flotek agree that by filing this unopposed motion at this time, the parties do not waive and hereby reserve all procedural rights in this litigation in the event this motion is not granted, including without limitation, the Gates Defendants' right to make a motion pursuant to Federal Rule of Civil Procedure 12(b) and Flotek's right to amend the complaint.

1

3.     The Stipulation and Agreement of Compromise, Settlement and Release, dated December 6, 2016 ("Settlement Agreement")[2] is attached as Tab 1 to the Appendix.  (*See* Tab 1, App. 1-14.)  A Proposed Order and Final Judgment has been submitted contemporaneously with this motion.

4.     The parties respectfully request that the Court conclude this matter by entering the Proposed Order and Final Judgment, which in relevant summary approves the Settlement Agreement as having been a result of diligent prosecution, dismisses this action with prejudice, releases the Gates Defendants and related parties from all claims, and bars Flotek and its shareholders from bringing additional Section 16(b) claims against the Gates Defendants.

## II.    LEGAL STANDARDS AND ISSUES

### A.    Section 16(b) of the Exchange Act

5.     An issuer may bring a Section 16(b) disgorgement action against any of the issuer's "statutory insiders":  officers, directors, and any person holding 10% or greater of any class of the issuer's equity securities (a "10% Beneficial Owner").  If a statutory insider purchases and then sells (or sells and then purchases) the issuer's equity securities within a six-month period, the "profits" on this "short swing" trading must be disgorged back to the issuer. *See* 15 U.S.C. § 78p(b); *see also Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972); *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 251 (1976).

6.     Here, following the receipt of a shareholder demand, Flotek, the issuer, pursued claims against the Gates Defendants for engaging in short-swing trades subject to Section 16(b).  The parties reached a settlement in which the Gates Defendants will pay (or disgorge to) Flotek approximately $15.5 million in alleged short-swing profits.  The parties agreed that Flotek would

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

2

file suit and that the Gates Defendants would promptly seek judicial confirmation of the settlement in an effort to bring finality to this matter. Accordingly, for the reasons set forth below, the Gates Defendants move the Court for the relief described herein.

> **B. The Court Must Evaluate the Settlement Only to the Extent Necessary to Ensure Diligent Prosecution of the Litigation**

7. Section 16(b) confers issuers with a private right of action to recover short swing profits. It provides:

> Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or *shall fail diligently to prosecute the same thereafter*; but no such suit shall be brought more than two years after the date such profit was realized.

15 U.S.C. § 78p(b) (emphasis added).

8. Accordingly, Section 16(b) permits a shareholder to sue on the issuer's behalf only "if the issuer shall fail or refuse to bring such suit within sixty days after request *or shall fail diligently to prosecute the same thereafter*." *Id.* (emphasis added).

9. The parties submit the Settlement Agreement for approval because the Gates Defendants were willing to pay the substantial sum of approximately $15.5 million to settle this matter only on the condition that they be fully and finally released from all potential Section 16(b) claims that could be brought against them for their trading in Flotek securities. The issuer's settlement of Section 16(b) claims precludes follow-on litigation if the Court concludes that the Settlement Agreement was the result of diligent prosecution of the claim. This is so because a shareholder has no right to litigate a Section 16(b) claim that already has been diligently prosecuted. *See Arthur G. McKee & Co. v. Gulf & Western Indus., Inc.*, 52 F.R.D. 332, 334 (D. Del. 1971); *see also Chechele v. Elsztain*, No. 11-cv-3320, 2012 WL 12358221 at *1 (S.D.N.Y. Aug. 1, 2012). Thus, a finding by the Court that the parties' settlement resulted

3

from "diligent[] … prosecut[ion]" will be res judicata and preclusive of further litigation. *Id.* at *2.

10. Section 16(b) cases are not derivative actions, and settlements of Section 16(b) actions are not subject to the court approval requirements of Federal Rule of Civil Procedure 23.1. *Chechele,* 2012 WL 12358221, at *2. As such, courts need not review Section 16(b) settlements for reasonableness, adequacy or fairness. *Id.* Since Section 16(b) actions are "sui generis," the only relevant standard is whether the issuer has diligently prosecuted the claim. *Id.*

11. The use of the term "diligent prosecution" in the statutory text means that the Court's inquiry should focus on the *process* leading to settlement. Here, the parties' settlement—negotiated at arm's length—satisfies that standard. For the reasons set forth below, the Court should hold that the Settlement Agreement represents diligent prosecution preclusive of further litigation and grant the other relief requested herein.

### III. ARGUMENT

#### A. The Action Was Diligently Prosecuted

12. Counsel for Flotek and counsel for the Gates Defendants engaged in a protracted arm's-length negotiation for a more than two-month period. The details of those negotiations make clear that Flotek diligently prosecuted the Action.

13. Specifically, Flotek received a letter from counsel for Andrew E. Roth, a Flotek shareholder, dated September 9, 2016, demanding that Flotek "take all steps necessary to require an accounting and disgorgement of profits realized in" the Gates Defendants'[3] transactions in

---

[3] With the exception of Defendant Jeffrey L. Gates, all of the Gates Defendants were identified in the Roth Demand Letter.

4

Flotek securities, which Roth asserted had resulted in short-swing profits disgorgeable to Flotek (the "Roth Demand Letter"). *See* Adams Aff. ¶ 4.[4]

14. Flotek sent the Roth Demand Letter to the Gates Defendants during the week of September 12, 2016. The Gates Defendants promptly retained outside counsel.[5] *See id.* ¶¶ 4-5.

15. On October 10, 2016, the Gates Defendants provided a single-spaced, eight-page position paper to counsel for Flotek outlining their arguments as to why the Gates Defendants are not liable under Section 16(b) (the "Gates Position Paper"). *See id.* ¶ 8. Section 16(b) deems shareholders to be "statutory insiders" and requires disgorgement of profits from short-swing trading only when the investor individually or as a member of a group holds in excess of 10% of any class of equity securities of an issuer. *See Lowinger v. Morgan Stanley*, 841 F.3d 122, 129-130 (2d Cir. 2016).

16. The Gates Position Paper explained that the Gates Defendants were not subject to Section 16(b) for three principal reasons. <u>First</u>, none of the Gates fund entities ever held title to more than 10% of any class of any Flotek equity security and, as such, they were not subject to Section 16(b)'s disgorgement provisions. <u>Second</u>, the Gates Defendants did not form a "group" that would allow their holdings to be aggregated such that their holdings were in excess of the 10% threshold. <u>Third</u>, even if the Gates Defendants were members of a "group," Section 16(b) still would not apply because none of the Gates Defendants were "beneficial owners" for purposes of Section 16(b), given the Securities Exchange Commission ("SEC") rules exempting entities like the Gates Defendants from liability. More specifically (as described in greater detail below), Section 16(b) defines "beneficial ownership" to mean voting or investment power over

---

[4] "Adams Aff." refers to the affidavit of Randall T. Adams, dated December 9, 2016, submitted with the Appendix.
[5] In the event that Flotek or the Court determines that Mr. Roth's counsel is entitled to attorney's fees for bringing this matter to Flotek's attention, any payment of said fees shall be paid by Flotek out of the payment to be made by the Gates Defendants to Flotek pursuant to the terms of the Settlement Agreement.

the securities at issue. The only Gates Defendants with voting or investment power over Flotek securities are specifically exempted from Section 16(b)'s beneficial ownership definition under an SEC Rule 16a-1, 17 C.F.R. § 240.16a-1(a)(1)(v), that excludes registered investment advisers ("RIAs") from the scope of Section 16 (the "RIA Exemption"). Thus, because the Gates Defendants were never "statutory insiders," the Gates Defendants have a complete defense to liability in this matter.

17. To evaluate the potential liability, the Gates Defendants engaged Cornerstone Research ("Cornerstone"), a well-regarded economic consulting firm with substantial experience in Section 16 matters, to assist them in calculating the potential disgorgeable profits. *See* Adams Aff. ¶ 6.

18. Meanwhile, outside counsel for Flotek, Andrews Kurth Kenyon LLP ("Andrews Kurth"), advised Flotek's board of directors on the strengths and weaknesses of Flotek's case. *See id.* ¶¶ 7, 9.

19. On October 18, 2016, Flotek's counsel responded to counsel for the Gates Defendants with regard to the assertions made in the Gates Position Paper. *See id.* ¶ 10. Flotek's counsel disputed the assertion that the law favors a finding of no liability in this case. *See id.*

20. Counsel for Flotek retained FTI Consulting ("FTI"), another expert consulting firm, to assist it in independently calculating the appropriate disgorgeable profits. *See id.* ¶ 13.

21. The parties executed a confidentiality agreement on October 20, 2016 to govern settlement discussions. *See id.* ¶ 11. That day, the Gates Defendants provided Flotek with a trade run reflecting the Gates Defendants' trades in Flotek securities during the relevant two-year statute of limitations period, as well as a calculation prepared by Cornerstone showing maximum

disgorgeable profits of approximately $37.5 million.[6] *See id.* ¶ 12. FTI subsequently analyzed those materials. *See id.* ¶¶ 13-14.

22. On October 24, 2016, the parties' counsel and their respective experts participated in a phone call regarding the technical details of the Gates Defendants' disgorgeable profit calculation. *See id.* ¶ 14. During that call, counsel for Flotek requested that the Gates Defendants provide: (a) legal authority for their approach to matching derivatives securities against other derivative securities; and (b) the Statistical Analysis System ("SAS") code and all the underlying data that the Gates Defendants' expert had used to calculate disgorgeable profits. *See id.* The Gates Defendants provided that authority and the requested SAS code and data on October 25, 2016. *See id.* ¶¶ 15-16.

23. By October 27, 2016, a dispute developed between the parties as to the proper application of Section 16(b)'s statute of limitations to calculate disgorgeable profits. *See id.* ¶ 17. Section 16(b) provides that disgorgement actions must be brought within "two years after the date such profit was realized." 15 U.S.C. § 78p(b). The Gates Defendants contended (and still do) that the proper application of this language to this case results in the exclusion of any trades that took place prior to the two year statute of limitations period from the profit disgorgement calculation. *See* Adams Aff. ¶ 17. Flotek contended that disgorgeable profits should be increased by matching trades within the two-year limitations period with trades outside the limitations period. *See id.* Flotek asserted that so long as one of the two matching trades took place within the two-year limitation period, the calculation was not time-barred. *See id.*

24. The Gates Defendants initially refused to provide Flotek with a calculation of profits using anything other than a strict two-year statute of limitations. *See id.* In response,

---

[6] Cornerstone's final calculation based on this application of the statute of limitations was $37,352,971.

Flotek advised that it would not proceed with settlement negotiations unless that data was provided to it. *See id.* ¶ 18. Accordingly, the Gates Defendants relented. *See id*. ¶¶ 18-19.

25. On October 28, 2016, the Gates Defendants provided to Flotek an alternative calculation of maximum disgorgeable profits of $59 million,[7] applying the statute of limitations methodology advocated by Flotek. *See id.* ¶ 19. The Gates Defendants provided a calculation prepared by their expert consultant, as well as the underlying code and data and a revised trade run. *See id*. ¶¶ 19-20.

26. On October 31, 2016, the Gates Defendants offered approximately $9.7 million in exchange for a complete release from liability. *See id*. ¶ 21.

27. On November 1, 2016, Flotek rejected this offer, and countered with a demand of $24.4 million. *See id*. ¶ 22.

28. On November 2, 2016, the Gates Defendants rejected Flotek's counteroffer and made a "best and final" offer of $13.4 million. *See id*. ¶ 23.

29. After a final round of discussions between counsel for the Gates Defendants and Flotek, the parties eventually agreed to a settlement amount of approximately $15.5 million. *See id.* ¶ 24. The Flotek board of directors approved this settlement amount on November 4, 2016. *See id*. ¶ 25.

30. The sixty-day window for Flotek to bring an action triggered by the Roth Demand Letter was set to expire as early as November 8, 2016. As such, in order to continue settlement discussions, Flotek required that the Gates Defendants enter into a standstill and tolling

---

[7] Cornerstone's final calculation based on this application of the statute of limitations was $58,737,829. *See id.* ¶ 20.

8

agreement in order to prevent the running of the statute of limitations. *See id.* ¶ 26. The Gates Defendants did so. *See id.*[8]

31. The parties exchanged drafts of the Settlement Agreement during this period. The parties had several points of contention over the language of the Settlement Agreement, which were eventually resolved. The Settlement Agreement was finalized on December 6, 2016. *See id.* ¶ 27.

32. Thus, as set forth above, the parties have engaged in protracted negotiations at arm's length, with the assistance of expert outside counsel and outside expert economic consultants, and those negotiations culminated in the Settlement Agreement in which Flotek will be paid nearly $6 million more than the amount that the Gates Defendants had initially offered to resolve the claims and over $2 million more than the Gates Defendants' "best and final" offer.

    B.    **The Settlement Was Fair**.

33. Although, as set forth above, the Court's determination that a Section 16(b) claim has been diligently prosecuted does not involve a substantive approval of the settlement, the benefits conferred by the Settlement Agreement support the conclusion that Flotek diligently prosecuted the claims.

34. Section 16(b) is a highly technical statute that has generated extensive litigation regarding who is subject to Section 16(b) and what transactions count in calculating disgorgeable profits. As Judge Winter of the Second Circuit noted in another case brought by Mr. Roth and the same plaintiff's counsel, "[a]lthough Section 16(b) is long in the tooth—older even than the author of this opinion—and the subject of countless judicial interpretations, it seems to be an ever-growing fount of close questions as to its meaning." *Roth v. Goldman Sachs Grp., Inc.*, 740

---

[8] Mr. Roth and his counsel were also parties to the standstill and tolling agreement signed by Flotek and the Gates Defendants. *See id.*

F.3d 865, 867 (2d Cir. 2014). This litigation concerns unsettled questions of law regarding whether RIAs, like Gates Capital Management, can properly take advantage of the RIA Exemption.

35. Indeed, two district courts recently reached different conclusions on this issue at the motion to dismiss stage. *See Greenfield v. Criterion Capital Mgmt., LLC et al.*, No. 15-cv-03583, 2016 WL 4425237, at *10 (N.D. Cal. Jul. 5, 2016) (dismissing Section 16(b) claim based on substantially the same arguments raised in the Gates Position Paper); *contra Greenfield v. Cadian Capital Mgmt.*, *LP*, No. 15 CIV. 4478 (ER), 2016 WL 5793416, at *1 (S.D.N.Y. Sept. 30, 2016) (denying motion to dismiss). Accordingly, the law is unsettled and likely will remain so for quite some time.[9]

36. Flotek would face substantial risks if it decided to litigate this matter to conclusion. This is especially true because the Gates Defendants have a complete defense to liability in this matter. Moreover, in light of the complex legal issues presented, litigating this case to completion would take years and would impose substantial costs and burdens on the parties, which would reduce the net recovery available to Flotek. The Settlement Agreement thus obviates the need for any such protracted and costly proceedings.

37. As mentioned, Section 16 applies to the Gates Defendants only to the extent that they are "beneficial owners" of at least 10% of any class of Flotek equity securities. For purposes of Section 16, "beneficial ownership" is defined in Rule 16a-1. Rule 16a-1 defines "beneficial owner" for purposes of calculating 10% beneficial ownership as the term is used in Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), and the rules promulgated thereunder. *See* 17 C.F.R. § 240.16a-1. In turn, Rule 13d-3 defines "beneficial owner" as "any person who,

---

[9] The Gates Defendants believe that the law is only "unsettled" due to the *Cadian* decision, which was incorrectly decided under Second Circuit precedent. Indeed, the Second Circuit has previously upheld the application of the RIA Exemption. *See Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*, 340 F.3d 79, 84-85 (2d Cir. 2003).

10

directly or indirectly … has or shares [] [v]oting power which includes the power to vote, or to direct the voting of, such security; and/or, [] [i]nvestment power which includes the power to dispose, or to direct the disposition of, such security." 17 C.F.R. § 240.13d-3(a). Thus, for purposes of Section 16, the party who holds voting or investment power over the securities at issue is the beneficial owner.

38.     However, Rule 16a-1 specifically exempts certain entities from the ambit of Section 16(b), including RIAs such as Gates Capital Management. Pursuant to the RIA Exemption, Section 16(b) does not apply to RIAs so long as they: (i) are registered under Section 203 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-3 ("Investment Advisers Act"); (ii) hold the relevant securities without the purpose or effect of changing or influencing control of the issuer; and (iii) hold the relevant securities on behalf of third parties in the ordinary course of business. 17 C.F.R. § 240.16a-1(a)(1)(v). Here, Gates Capital Management is an RIA registered under Section 203 of the Investment Advisers Act, a registration which also covers the other non-fund Gates Defendants. As such, Gates Capital Management, Gates Capital Management, L.P., Gates Capital Management GP, LLC (collectively, the "RIA Entities")[10] cannot be "beneficial owners" under Section 16. (*See* Tab 2, App. 15.)

39.     At the same time, the Gates Defendants that are fund entities—Gates Capital Partners LLC, ECF Value Fund, L.P., ECF Value Fund II, L.P., ECF Value Fund International Ltd., and ECF Value Fund International Master L.P. (the "Fund Entities")—also are not beneficial owners under Section 16 because they do not maintain voting or investment authority over Flotek securities. Rather, the Fund Entities have delegated voting and investment power over their entire portfolios to the RIA Entities. This delegation of beneficial ownership by a non-

---

[10] Defendant Jeffrey L. Gates is exempt from Section 16(b) as a "control person" of an exempt RIA, pursuant to 17 C.F.R. § 240.16a-1(a)(1)(vii).

11

exempt entity to an exempt entity is proper and serves to eliminate the non-exempt entity's beneficial ownership of the security. (*See* Tab 10, App. 146, SEC Div. of Corp. Fin., Compliance and Disclosure Interpretations, *Exchange Act Sections 13(D) and 13(G) and Reg. 13D-G Beneficial Ownership Reporting*, Q.105.04, Sec. Com. Discl. 5618632 (C.C.H.), 2015 WL 5618632 (Sep. 14, 2009) (citing SEC Exchange Act Release No. 13291, Example 11 (Feb. 24, 1977) (non-exempt entity is not a beneficial owner if it has delegated voting and investment authority to an exempt entity so long as the delegation cannot be rescinded within 60 days)).)

40. Moreover, even if the Fund Entities had not delegated beneficial ownership to the RIA Entities, Flotek would still need to establish that the Gates Defendants formed a "group" for purposes of Section 16. This is necessary to Flotek's claim because, as mentioned, none of the Gates Defendants individually beneficially owned more than 10% of Flotek's stock. As a result, the Gates Defendants would cross the 10% beneficial ownership threshold only if their holdings are added together. The Gates Defendants maintain that Flotek will not be able to establish—or adequately allege—that the Gates Defendants had an *agreement* with respect to Flotek securities, which is necessary to the establishment of group liability. *See Dreiling v. Am. Online Inc.*, 578 F.3d 995, 1002 (9th Cir. 2009) (internal citations omitted); 17 C.F.R. § 240.13d-5(b)(1).

41. Counsel for the Gates Defendants recently achieved dismissal of a Section 16(b) action on the pleadings on similar grounds in the United States District Court for the Northern District of California based on both the RIA Exemption and group defenses outlined above. *See Criterion Capital Mgmt.*, 2016 WL 4425237, at *10. Thus, Flotek faces serious risk of losing on a motion to dismiss. In that event, Flotek's recovery would be zero.

42. Despite the significant risk that Flotek would fail to establish the Gates Defendants' Section 16(b) liability, the Settlement Agreement provides Flotek with a substantial

recovery. Pursuant to the Settlement Agreement, Flotek will receive $15,482,862.90 (the "Settlement Amount") in disgorged profits from the Gates Defendants. (*See* Tab 1, App. 3, 5.)

43. As stated above, based on the parties' calculations, the disgorgeable profits in this matter would be $37,352,971 based only on matching trades within the two-year statute of limitations ("24 Month Calculation") or $58,737,829 based on matching trades outside of the two-year period with trades within the two-year period ("30 Month Calculation"). The Settlement Amount is 41% of the 24 Month Calculation and 26% of the 30 Month Calculation. The Settlement Amount can also be viewed as 30% of the 24 Month Calculation plus 20% of the difference between the 24 Month Calculation and the 30 Month Calculation.[11] Those amounts are well within the range of other Section 16(b) settlements.

44. By way of comparison, Mr. Roth, an experienced Section 16(b) plaintiff who has brought at least nine Section 16(b) actions in federal court, along with his counsel who represented him in each of those matters, recently submitted a settlement for approval in a Section 16(b) action in the United States District Court for the Southern District of New York. (*See* Tab 3, App. 23-40.) That action also involved questions regarding beneficial ownership under Rule 16a-1, including the application of the RIA Exemption. (*See* Tab 4, App. 66.) In that action, the parties agreed to a settlement amount of $15,750,000, which was 30% of the total liability, which was claimed to have been $52,070,461. (*See* Tab 3, App. 49-50.) On March 15, 2016, the Hon. William H. Pauley approved that settlement as having been "vigorously" prosecuted. (*See* Tab 5, App. 70-74.) As such, the Settlement arrived at here is comparable to that figure.

---

[11] The Gates Defendants continue to refuse to concede the propriety of Flotek's statute of limitations argument.

13

45. Moreover, Cornerstone found—in a report unrelated to this case—that in a sample of federal securities class action cases with estimated damages of less than $50 million, the median settlement recovered was only 6.7% of estimated damages. (*See* Tab 6, App. 105.) Across all cases in the sample, regardless of the size of damages, the percentage was 1.8 %. (*See id*. at App. 104.) Cornerstone's sample is limited to securities fraud cases, which offer defenses not available under Section 16(b)'s strict liability regime. (*See id.* at App. 120.) Still, the significant recovery that Flotek expeditiously achieved in this matter—where there is a genuine question as to whether Flotek has a right to recover at all—clearly falls within the range of reasonableness.

46. As to the timing of the Settlement Agreement, this case is being settled just beyond the 60-day period proscribed by Section 16(b) for the issuer to take action and resolve the matter before a plaintiff shareholder can bring suit. Within that time period, the Gates Defendants provided the key discovery necessary for Flotek and its board of directors to appropriately assess liability and damages. The Gates Defendants produced trade runs and calculations, allowing for a determination of the amount of disgorgeable profits at issue. Moreover, the Gates Defendants provided documentation showing the structural and contractual relationships between the Gates Defendants, which allowed Flotek to determine which Gates Defendants, if any, held beneficial ownership over Flotek securities and would thus be subject to Section 16. Those materials also allowed Flotek to assess the validity of the Gates Defendants' argument that the RIA Exemption applies to the RIA Entities and that the Fund Entities had effectively delegated voting and investment authority to the RIA Entities. As such, the parties agree that settling after an exchange of the key information, but before incurring the expense of motion to dismiss briefing, is reasonable and appropriate. *See* Adams Aff. ¶¶ 18-19.

## IV. CONCLUSION AND PRAYER FOR RELIEF

47. The Gates Defendants respectfully request that the Court, as reflected in the Proposed Order and Final Judgment, approve the Settlement Agreement as having been a result of diligent prosecution, dismiss this action with prejudice, release the Gates Defendants and related parties from all claims, and bar Flotek and its shareholders from bringing additional Section 16(b) claims against the Gates Defendants.

Respectfully submitted,

Dated: December 9, 2016
Houston, Texas

**BRACEWELL LLP**

*/s/ Bradley J. Benoit*
Bradley J. Benoit
Attorney-in-Charge
State Bar No. 24012275
Southern District of Texas Bar No. 24495
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 221-1224
Facsimile: (713) 222-3204

*Of Counsel:*

**SCHULTE ROTH & ZABEL LLP**
Michael E. Swartz
Randall T. Adams
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel for Gates Capital Management, L.P., Gates Capital Management, Inc., Gates Capital Management GP, LLC, Gates Capital Partners LLC, ECF Value Fund, L.P., ECF Value Fund II, L.P., ECF Value Fund International Ltd., ECF Value Fund International Master L.P., and Jeffrey L. Gates*

**CERTIFICATE OF CONFERENCE**

I certify that counsel for Defendants has conferred with counsel for Plaintiff and that Plaintiff does not oppose the relief sought in this motion.

                                  */s/ Bradley J. Benoit*
                                   Bradley J. Benoit

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via electronic means to all parties entitled to receive notice in this case through the Court's ECF system.

                                  */s/ Bradley J. Benoit*
                                   Bradley J. Benoit